IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**JERRY L. HOFFMAN, JR.**,

Case No.: 1:21-cv-57-AW-GRJ

    Plaintiff,

vs.

**CITY OF WILLISTON**, and
**BRYAN LANDIS**, Former City of
Williston Police Officer, in
in his individual capacity,

    Defendants.

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **JERRY L. HOFFMAN, JR.**, by and through the undersigned attorneys, sues Defendants, **CITY OF WILLISTON**, Florida, and **BRYAN LANDIS**, Former City of Williston Police Officer, in his individual capacity, and hereby alleges as follows. This amended complaint is filed as a matter of right pursuant to the Federal Rules of Civil Procedure.

### INTRODUCTION

1. This is an action for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution, to be free from unlawful arrest and detention, and for violation of Plaintiff's rights under the First Amendment of the United States Constitution, to enjoy freedom of speech. Plaintiff seeks damages, as well as attorney's fees and costs.

2. This action is brought by Plaintiff, a citizen of the

United States, who was the victim of a willful and purposeful unreasonable seizure of his person, excessive force used against him without probable cause, justification or excuse, and interference with and denial of his rights to free speech by denial of and interference with his right to gather information about public officials in a form readily disseminated to others so as to promote free discussion of government affairs, and which was made and done for malicious purposes only.

## JURISDICTION AND VENUE

3.   This action arises under 42 U.S.C. §§ 1983 & 1988. Jurisdiction is founded on 28 U.S.C. §§ 1331 & 1343.

4.   All incidents material to this action occurred in Levy County, Florida, and both Defendants "reside" in Levy County.  Venue is therefore proper in the Gainesville Division of the Northern District of Florida pursuant to 28 U.S.C. § 1319(b), and Local Rule 3.1(4).

## PARTIES

5.   Plaintiff, Jerry L. Hoffman, Jr., is an adult citizen of the United States and is currently a resident of Williston, Levy County, Florida, and was a resident of Levy County, Florida during all relevant times of this action.

6.   Defendant, City of Williston ("City"), is an incorporated municipality of the State Of Florida, and at all times relevant did, and still does, operate the City of Williston

Police Department as a department of said municipality, and said City employs all police officers who work for it's City of Williston Police Department.

7.   At all times relevant, Defendant, Bryan Landis, was employed by the City of Williston in its City of Williston Police Department as a Police Officer, and was at all times applicable holding the rank of Sargent and was at all times relevant a supervisor in the City of Williston Police Department.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8.   On or about July 3, 2020, Plaintiff was walking upon the public roadways of the City and Levy County at about 7:00 am on his way to a meeting when he noticed a marked police patrol car vehicle parked outside and adjacent to an abandoned hospital inside the City.

9.   At all times relevant, Defendant Landis was the officer operating the stated police vehicle, and he so parked it, and was inside it, at the abandoned hospital, where he was "on-duty" for purposes of performing his duties as a City police officer.

10.  The police vehicle was parked in a manner that is was "tucked" away under an overhand and in an enclosed space on three sides so that it was only visible from the one front side.  The police vehicle had been backed into the space so that the vehicle front was facing the roadway upon which Plaintiff was walking.

11.  Upon noticing the police vehicle so parked Plaintiff found it unusual that is was parked in a place and manner that

made it essentially hidden from public view. After taking such mental notice Plaintiff proceeded on to walk to his meeting elsewhere.

12. About two hours later, at about 9:00 am, Plaintiff was walking back along the same roadway returning from his meeting that was now concluded, when he observed that the same police vehicle was still parked in the same manner and place as it was some two hours earlier.

13. Plaintiff then walked onto the private property of the abandoned hospital to get a closer look at the parked vehicle and after confirming it was indeed a City of Williston police vehicle, he stopped walking inside what was the old parking lot of the abandoned hospital, which was about 100 feet from the parked police vehicle, and he then took out his cellular phone, activated the video recorder function of said phone, and began filming the parked police vehicle, with himself narrating that such action of parking by the officer in such a place and for such a time was an example of laziness and wasting taxpayer money.

14. Plaintiff then filmed the police vehicle with Defendant Landis sitting in the driver's seat for several minutes, and noted that Defendant Landis was staring back at him.

15. After several minutes of filming, Plaintiff stopped recording, and walked back to the public right of way, and was departing the area on foot.

16.  Suddenly, while walking away from the area, Defendant Landis drove his vehicle toward Plaintiff.  When Plaintiff saw this he was fearful for what was coming next and began video recording the interaction with him and Defendant Landis on his cellular phone.

17.  Defendant Landis then stopped his patrol vehicle in the roadway, lowered his window, and said to Plaintiff from about 30 feet away "you're on private property, do you own that property?"

18.  Plaintiff did not hear Defendant Landis ask him this question, and is only certain it was asked because the event was video recorded with audio.  Owing to the fact he did not hear the question, Plaintiff did not answer it.  However, Plaintiff was under no legal obligation to answer the question even if he heard it, as a citizen who is not under at least a minimum amount of reasonable suspicion of committing a crime is under no obligation to even acknowledge law enforcement in such a setting, never mind answer questions of law enforcement.

19.  Defendant Landis then aggressively drove his vehicle off the roadway and perpendicular to it, driving onto the grassy area off the side of the roadway where Plaintiff was walking and retreating, and in a manner as if he was about to run over Plaintiff with his patrol vehicle.  He then brought his patrol vehicle to a stop partly on the road, partly on the grass/side of the road, and perpendicular to the road.

18.  Defendant Landis then quickly exited his patrol

vehicle, walked aggressively toward Plaintiff, pointed his right arm toward the hood of his patrol vehicle, and demanded to Plaintiff that he "go ahead and put your hands on the hood."

19. At that moment and upon such instructions, Defendant Landis had detained Plaintiff factually and legally as to the definition of a detention, but unlawfully inasmuch as Defendant Landis has no legal right to do so.

20. Plaintiff protested that "I haven't done anything illegal," to which Defendant Landis replied "you're trespassing," to which Plaintiff in turn again replied "no I'm not," to which Defendant Landis then replied "yes, you are."

21. Plaintiff, however, was not trespassing. The property he was on at the time of Decedent Landis' detention of him was at most foremost a public easement upon private property upon which a trespass cannot occur for mere transitory walking. Additionally, the owner of the property had never advised Plaintiff that he could not walk upon the edge of the property, or posted "no trespassing" signs, at least some of which is a prerequisite for the crime of trespassing upon private land under Florida law.

22. Immediately after telling Plaintiff "yes, you are" trespassing, Defendant Landis then physically grabbed Plaintiff and began an attempt to physically detain, restrain and arrest Plaintiff.

23. Plaintiff then protested that he had committed no

crime, which was a true and accurate statement. He also explained to Defendant landis the correct legal standard for trespassing inasmuch as he advised Defendant Landis that no person who was an owner of the property had asked him to leave or had asked the police or Defendant Landis to remove him, and therefore Defendant Landis had no justification to detain, arrest or otherwise molest him.

    24.  During his attempt to arrest and detain Plaintiff Defendant Landis demanded that Plaintiff give him the phone he was recording with, punched Plaintiff in the head, and grabbed Plaintiff's arm and tried to grab Plaintiff's phone from his hand so hard that Defendant Landis broke the phone, all in an attempt to force him to submit to his unlawful arrest and detention, and to stop him from recording same.

    25.  During his attempt to detain and arrest Plaintiff Defendant Landis also demanded that Plaintiff provide him with proof of identification, which Plaintiff refused since he committed no crime and there was no basis to detain or question him, and a citizen whom the police have no right to at least question has no obligation to produce identification.

    26.  As Defendant Landis was battering, grabbing, kicking, and punching Plaintiff in an attempt to arrest him and stop his recording, Plaintiff resisted such unlawful arrest without force or violence by backing away from Defendant Landis' attack.

    27.  During the process of him backing away from Defendant

Landis, Plaintiff advised Defendant Landis that the whole ordeal between him and Defendant Landis was being "live streamed on the internet."

28.  After so being advised, Defendant Landis immediately discontinued all attempts to further detain or arrest Plaintiff, or even to identify him.

29.  Defendant Landis then advised Plaintiff that Plaintiff needed to "head on down the road."

30.  As Plaintiff "headed on down the road" Defendant Landis told Plaintiff multiple times that he "Need[ed] to keep moving."

31.  During the time he was "headed down the road" Defendant Landis kicked Plaintiff's foot in an attempt to trip him, significantly injuring his ankle.

31.  Plaintiff was never obligated to "head on down the road" or to "keep moving," and Defendant Landis had no right or authority to demand he do so.

32.  Under Florida law a police officer cannot initiate an investigation for trespassing upon property and detain a subject for trespassing absent the clear posting of no trespassing signs the prior written authorization of the property owner, or the request of the owner who is present and requests help, neither of which circumstances occurred in this case, and Defendant Landis had no justification under law to stop, investigate, interrogate, or to detain or arrest Plaintiff, or otherwise given him orders of any kind.

33. After his ordeal, Plaintiff filed complaints about what happened between him and Defendant Landis. Ultimately, Plaintiff's complaints were investigated as part of a investigation into Defendant Landis' conduct conducted by the nearby Gainesville Police Department, and the Office of the State Attorney for the Eighth judicial Circuit of Florida.

34. As a result of those investigations it was concluded by the assigned investigators that not only did Defendant Landis engage in improper actions which constitute violations of Plaintiff's Constitutional rights, but that Defendant Landis was dishonest, not credible, and not truthful.

34. Before the event with Plaintiff on July 3, 2020, William P. Cervone, State Attorney for the Eighth Judicial Circuit of Florida, had prior noticed the Chief of Police and other management of the City of Williston Police Department, on several occasions, that his office had concerns with the conduct of Defendant Landis with regard to cases presented to his office for prosecution by him.

35. Prior to the event with Plaintiff on July 3, 2020, the Office of William P. Cervone had advised the Chief and other management at the City of Williston Police Department that Defendant Landis had a propensity, and then a history, to violate the civil rights of citizens, with violence, and to be dishonest in his reports and testimony as to same.

36. As a result of the investigation by his own office

and/or as a result of the investigation by the Gainesville Police Department, William P. Cervone advised the City of Williston Police Department that the Office of the State Attorney would no longer prosecute cases in which Defendant Landis was a witness because he was dishonest and not credible.

37. At the time of the events with Plaintiff and Defendant Landis on July 3, 2020, Defendant Landis had been an officer with the City of Williston Police Department for some 8 years.

38. During that entire 8 year period of his employment the City of Williston, the City of Williston Police Department, and all Chiefs and management at the City of Williston Police Department did not ever provide any training for or to Defendant Landis, beyond training for vehicle speed measurement and traffic enforcement.

39. Thus, while he was expected to act as police officer in all settings and circumstances, nor merely write traffic tickets, Defendant Landis was never provided training as to any standards, methods, practices, procedures, legal requirements, or changes in legal requirements, or any other training of any kind about how to operate as a police officer, other than how to write and justify traffic tickets.

40. Defendant Landis was specifically not provided with training as to how to conduct a trespassing to private land investigation, the legal requirements for the crime of trespassing, the notice requirements for trespassing, or any

other aspects of stopping, detaining, or investigating any citizen as to any suspicion of trespassing.

41. Defendant Landis was specifically not provided with training as to the rights of citizens to make and take video recordings of police officers, places, or events that are visible to the public generally from any lawful places the citizen is allowed to occupy, and that Plaintiff had a Constitutional right to video record Defendant Landis as he performed his duties as a police officer in public.

42. Defendant Landis was specifically not provided with training as to the methods, proper and improper, to detain, arrest, or investigate persons, as to both how to conduct investigations and how to act and not act with regard to using physical force and when such is proper, justified, excessive or illegal.

43. The City, the City of Williston Police Department, or proper authorities in said police department took no effective action to train, supervise or discipline Defendant Landis after being put on notice by the office of William P. Cervone that Defendant Landis was prone to violate the civil rights of citizens with violence, and even then lie about doing it.

44. Had the City, the City of Williston Police Department, or proper authorities in said police department taken action to train, supervise or discipline Defendant Landis after being put on notice by the office of William P. Cervone that Defendant

Landis was prone to violate the civil rights of citizens with violence, and even then lie about doing it, the violations to which Plaintiff was subjected and the damages he incurred therefrom would have been avoided entirely.

45. The City, the City of Williston Police Department, or proper authorities in said police department knew or should have known that Defendant Landis required training in procedures, processes, and laws subsequent to his hire from time to time - and certainly at least multiple times in 8 years - as to laws, processes, circumstances, technology and general understanding of policing changes, and on and in all matters of which his was expected to provide policing services and interact with the public at large.

46. Had the City, the City of Williston Police Department, or proper authorities in said police department required that Defendant Landis undergo training in procedures, processes, and laws subsequent to his hire from time to time - and certainly at least multiple times in 8 years - as to laws, processes, circumstances, technology and general understanding of policing changes, on and in all matters of which his was expected to provide policing services and interact with the public at large, the violations to which Plaintiff was subjected and the damages he incurred therefrom would have been avoided entirely.

47. Defendant Landis did not have a body worn camera to record audio or video of his interactions with Plaintiff despite

that departmental policy required him to use his body camera at all times during his interactions with Plaintiff and the public.

48. Had Defendant Landis been using a body worn camera as required of him such video and audio would have confirmed that all the events set forth by Plaintiff are true and correct.

**COUNT I - 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANT LANDIS**

49. Plaintiff realleges paragraphs 1 through 48, *supra*.

50. Defendant Landis, by his actions alleged above, in arresting, detaining, and battering Plaintiff, knowingly without justification and probable cause and based upon false and fabricated justifications invalid under law, effected an unreasonable seizure and arrest of Plaintiff, and used excessive force doing same that caused Plaintiff permanent personal injury, emotional suffering, and other manner of damages, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and same is actionable under 42 U.S.C. § 1983.

51. Defendant Landis, by his actions alleged above, in arresting, detaining, and battering because Plaintiff was video recording his actions in public, and in instigating his detention, interrogation and battery of Plaintiff de facto in punishment for Plaintiff making a video recording of him and to dissuade and discourage Plaintiff from making video recordings of himself or other police officers in the future, knowingly without justification or probable cause, and based upon false and fabricated justifications invalid under law, effected an

unreasonable seizure and arrest of Plaintiff, and used excessive force doing same that caused Plaintiff permanent personal injury, as well as mental pain and suffering, in violation of the First Amendment to the United States Constitution, and same is actionable under 42 U.S.C. § 1983.

52.  As a result of Defendant Landis's intentionally and malicious conduct respecting Plaintiff, Plaintiff, Plaintiff has suffered and continues to suffer psychological injuries consisting of mental pain and anguish, humiliation, shame, and public ridicule, as well as suffered inconvenience, discomfort, and financial expense.

53.  Plaintiff has retained the undersigned attorneys and is obligated to pay them a reasonable fee, and is entitled to collect that fee from Defendant pursuant to in 42 U.S.C. § 1988 if he is the prevailing party.  A reasonable fee for the undersigned considering the nature of this case and his experience is no less than $475 per hour.

**WHEREFORE**, Plaintiff demands judgment against Defendant Landis for compensatory damages, punitive damages, court costs, attorneys fees, and all other relief the Court finds just and proper.

### COUNT II - 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANT CITY OF WILLISTON

54.  Plaintiff realleges paragraphs 1 through 48, *supra*.

52.  Defendant City either lacked or utilized policies,

customs and practices which lead to the Constitutional violations outlined in this complaint, and caused Plaintiff's injuries, all in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution, and same is actionable under 42 U.S.C. § 1983.

53. At all times relevant and with the failures above-stated, despite it's notice regarding the propensity and history for Defendant Landis to engage in Constitutional rights deprivations, as well as his honesty problems, as brought to its attention multiple times by the State Attorney's Office, the City had a policy or polices related to training Defendant Landis and other officers generally which policy was that training, in fact, was simply not required, and therefore such policies were objectively deliberately indifferent to the likelihood that a particular constitutional violation – violently detaining an battering a citizen with zero probable cause for either – would occur.

54. At all times relevant, the City failed to supervise and discipline Defendant Landis by failing to supervise properly and discipline him property so as to avoid violating the Constitutional rights of citizens, even after being so warned of the repeated concerns in that regard respecting Defendant Landis as noticed by the State Attorney's Office of Defendant's improper actions, which notices were wholly sufficient to put the City on notice that supervision and discipline of Defendant Landis – at

least - was required.

55. At all times relevant, the City was aware or should have been aware of the need to train officers, such as Defendant Landis, so that those officers followed a policy and process of making Constitutionally-sound detentions of and interactions with citizens, such as Plaintiff. The City lacked any policy or process to train officers, or even supervisors, in this regard, and the lack of such a training policy, process or program was inadequate to protect the rights of citizens by the officers who are intended to protect them. As such, the actions of the City were sufficiently deliberately indifferent to the rights of citizens that its deliberate indifference was its official policy. Had any of such proper training processes been done by the City prior to the detention of Plaintiff by Defendant Landis, the violation of Plaintiff's constitutional rights would not have occurred.

56. Even if the need to train and supervise officers generally was not so obvious as above pleaded, there was a sufficient pattern of Constitutional violations by Defendant Landis that were given a "blind eye" by the City, thereby placing the City on constructive notice of the need to so train and supervise Defendant Landis specifically. Defendant Landis violated the rights of many people before Plaintiff. He only could accomplish that because the City never bothered to notice, care about, address or resolve his propensity to violate the

rights of citizens and to be dishonest and violent in doing so.

57.  As a result of Defendant City's improper policies, customs, and/or practices, failure to supervise and train and to properly discipline, Plaintiff has suffered and continues to suffer physical injuries to his person that are permanent and continuing in nature, permanent psychological injuries consisting of mental pain and anguish, humiliation, shame, and public ridicule, as well as suffered inconvenience, discomfort, and financial expense.

58.  Plaintiff has retained the undersigned attorneys and is obligated to pay them a reasonable fee, and is entitled to collect that fee from Defendant pursuant to in 42 U.S.C. § 1988 if he is the prevailing party.  A reasonable fee for the undersigned considering the nature of this case and his experience is no less than $475 per hour.

**WHEREFORE,** Plaintiff demands judgment against Defendant City of Williston for compensatory damages, court costs, attorneys fees, and all other relief the Court finds just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all matters so triable.

**ALL FLORIDA JUSTICE, LLC**
Law Office of Don Pinaud

*[signature]*

_____
**Donald E. Pinaud, Jr.**
Trial Counsel
Fla. Bar No.: 111694
4495-304 Roosevelt Blvd, #202
Jacksonville, Florida 32210
(904)552-5500
(904)398-1568 - Fax
AllFloridaJustice.com
Don@AllFloridaJustice.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of Court's electronic filing system on this 10 day of July, 2021, which system will send copies electronically to all counsel of record.

**ALL FLORIDA JUSTICE, LLC**
Law Office of Don Pinaud

_____
**Donald E. Pinaud, Jr.**
Trial Counsel
Fla. Bar No.: 111694
4495-304 Roosevelt Blvd, #202
Jacksonville, Florida 32210
(904)552-5500
(904)398-1568 - Fax
AllFloridaJustice.com
Don@AllFloridaJustice.com
Attorneys for Plaintiff